# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COREY DONOVAN and LINDA DONOVAN,** : | | |
| Plaintiffs, : | CIVIL ACTION | |
| : | | |
| v. : | No. 17-03940 | |
| : | | |
| **STATE FARM MUTUAL AUTOMOBILE** : | | |
| **INSURANCE COMPANY,** : | | |
| Defendant. : | | |

**McHUGH, J.**                                                                                                               June 28, 2019

## MEMORANDUM

This case raises two related questions under Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL). The first involves the right to aggregate or "stack" the limits of coverage for underinsured (UIM) benefits between two separate policies of insurance, commonly referred to as "inter-policy" stacking. The second is whether a commonly used exclusion to prevent the stacking of benefits by combing the limits of separate policies, commonly referred to as the "household exclusion," remains viable following the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019).

The defendant carrier concedes that inter-policy stacking of UIM benefits is permissible under Pennsylvania law but contends that its insureds waived such stacking when the policies were purchased. I agree that inter-policy stacking can be waived, but further conclude as a matter of law that no waiver was effectuated in this case as to the policy through which coverage is sought. With respect to the enforceability of the household exclusion, the broad language of the Supreme Court in *Gallagher* favors a conclusion that such provisions are *per se* unenforceable. But even if *Gallagher* were to be limited to cases where a policy provides for stacked coverage,

1

as urged by the defense, the household exclusion is still unenforceable in this case, because inter-policy stacking was not validly waived. Consequently, I will grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Cross-Motion.

## I. Pertinent Facts

In July 2015, Plaintiff Corey Donovan was involved in an accident while riding his motorcycle. The motorist who struck Plaintiff maintained insurance coverage, and the carrier tendered the full liability limit of $25,000 available under the motorist's policy. Plaintiff then filed a claim for underinsured motorist (UIM) benefits under the motorcycle policy he held with Defendant State Farm Mutual Automobile Insurance Company. The policy, which he had purchased in April 2015, provided UIM coverage up to $50,000 per person. State Farm tendered the full limit available under the policy.[1]

Corey Donovan resides with his mother, Plaintiff Linda Donovan, who maintains a Personal Automobile Policy with State Farm. Her policy extends UIM coverage to "resident relatives," defined as a relative who resides primarily with the named insured. After the motorcycle accident, Mr. Donovan filed a claim for UIM benefits under his mother's policy, which provides for UIM benefits of up to $100,000 per individual.

State Farm denied this claim, stating that Ms. Donovan's policy did not allow for additional coverage of Mr. Donovan. Defendant State Farm's automobile policy sets forth different coverage terms for UIM benefits depending on whether the insured selected stacked or unstacked UIM coverage. Under Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), a motorist with stacked coverage is entitled to UIM benefits equal to the aggregate amount of liability limits applicable to each vehicle for which the individual is insured. *See* 75

---

[1] The severity of Mr. Donovan's injuries is not disputed, as he suffered an arm injury requiring multiple surgeries, and has permanent deformities of the arm and limitations of its use.

2

Pa. Cons. Stat. § 1738(a). Under some circumstances, an insured can aggregate coverage under one policy issued by a carrier with one or more other policies issued by that carrier, which is known as inter-policy stacking. An insured can elect to waive stacking, in which case UIM coverage is limited to the amount stated for a single vehicle in the policy in return for a lower premium. *Id.* §§ 1738(b), (d).

Ms. Donovan's policy covered three vehicles, but in 2012, she signed a waiver declining stacked UIM benefits under her automobile policy. Pls.' Compl. Ex. D, ECF No. 1-6. It stated:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject stacked limits of coverage. I understand my premiums will be reduced if I reject this coverage.

*Id*. According to State Farm, this waiver eliminated both the right to stack limits of coverage as to the vehicles identified in the policy—intra-policy stacking—and the right to combine the policy the UIM benefits with any other State Farm policy—inter-policy stacking. Plaintiffs contend that the waiver applies only to intra-policy stacking.[2]

The policy differentiates stacked versus unstacked coverage by the codes Coverage W and Coverage W3, respectively. For W3 unstacked coverage, the policy sets forth an exclusion which provides: "THERE IS NO COVERAGE FOR AN ***INSURED*** WHO SUSTAINS ***BODILY INJURY*** WHILE ***OCCUPYING*** A MOTOR VEHICLE ***OWNED BY YOU*** OR ANY ***RESIDENT RELATIVE*** IF IT IS NOT ***YOUR CAR*** OR A ***NEWLY ACQUIRED CAR***." Def.'s Mot. Summ. J. Ex. 2, at 37, ECF No. 16-6.[3] This language represents the "household

---

[2] Corey Donovan also rejected stacked limits for his motorcycle policy, but, as discussed below, the waiver accompanying his policy is irrelevant because he is seeking benefits under his mother's policy.

exclusion," which disclaims UIM coverage for an otherwise insured relative residing in the household if they are injured while occupying a vehicle other than a car belonging to the named policy holder.

In denying Plaintiff Corey Donovan's claim, State Farm offered the following explanation in a June 22, 2016 letter:

> We see no coverage opportunities for Corey under the auto policy of Linda Donovan. With Corey having non stacking underinsured coverage on the vehicle involved in the accident. [*sic*] And with Linda Donovan having non-stacking underinsured coverage on her auto policy of insurance, it is our position that the only source of underinsured coverage for Corey is his motorcycle policy with a $50,000 per person limit.

Pls.' Compl. Ex. C, ECF No. 1-5.

After receiving this denial letter, Plaintiffs filed this action seeking declaratory relief. In Count I, Plaintiffs request an order declaring that Corey Donovan may, at a minimum, recover up to $50,000 in additional UIM benefits under the literal terms of his mother's policy. Pls.' Compl. at 7, ECF No. 1-1. In Count II, Plaintiffs seek an order declaring that Corey Donovan may recover up to $100,000 in additional UIM benefits under his mother's policy, on the ground that Ms. Donovan waived only intra-policy stacking but did not waive *inter*-policy stacking. *Id.* at 8-11. In supplemental briefing requested by the Court, the parties have addressed the implication of *Gallagher v. Geico*, 201 A.3d 131 (Pa. 2019).[4]

The parties have agreed to proceed on a stipulated record by filing cross-motions for summary judgment.

---

[3] With respect to these exhibits, the Court has adopted the pagination employed by the parties and indicated in the upper right-hand corner of each page.

[4] Although the parties did not request that I defer ruling until *Gallagher* was decided, because this case involves the Declaratory Judgment Act, 28 U.S.C. § 2201, I chose to do so with the expectation that it might significantly change Pennsylvania law. That has proven to be true.

## II. Controlling Standard

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). When addressing cross-motions for summary judgment, as is the case here, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998)). The parties in this case dispute the proper interpretation of an insurance contract, and no party has argued there is a need for further evidence, thus presenting a pure question of law for the Court. *See 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 170 (Pa. 2005); *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 330 n.7 (3d Cir. 2008). This case may therefore be properly resolved by motion for summary judgment.

## III. Discussion

A. **The Waiver signed by Ms. Donovan does not suffice to waive inter-policy stacking.**

There is little direct authority on the intricacies of inter-policy stacking under Pennsylvania law. The most instructive precedent for purposes of this case is the Supreme Court's decision in *Craley v. State Farm Fire and Casualty Co.*, 895 A.2d 530 (Pa. 2006).[5] *Craley* clarified several issues under the MVFRL. First, citing 75 Pa. C.S. §1738(a), it confirmed that the Act "unambiguously provides for inter- as well as intra-policy stacking, thus

---

[5] *Craley* followed a torturous path in getting to the Supreme Court, and I endorse the observation of the Pennsylvania Superior Court that "cases addressing the interplay of the household vehicle exclusion and inter- and intra-policy stacking and what can and cannot be waived are far from models of logic and clarity." *State Farm Fire & Casualty v. Craley,* 844 A.2d 573, 574 (Pa. Super. 2004), *affirmed* , 895 A.2d 530 (Pa. 2006).

5

expressing the clear intention of the General Assembly to compel insurers to provide stacking coverage absent a valid waiver." 895 A.2d at 539. In reaching this result, it rejected the view that inter-policy stacking could never be waived. *Id.* at 536. Second, it held that the relevant waiver is the one signed with respect to the policy under which stacked benefits are being sought. *Id.* at 533. For purposes of this case then, it is Linda Donovan's waiver that has legal significance; Corey Donovan's waiver is irrelevant. Third, it concluded that "[i]t is evident that the General Assembly sought to ensure that policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it." *Id.* at 541 (citation omitted).

The Court then turned to an anomaly in the statute with respect to inter-policy stacking—the fact that the language prescribed by §1738(d) to accomplish a waiver of stacked benefits does not on its face "clearly address an inter-policy stacking waiver." 895 A.2d at 541. The insured in *Craley* had signed a waiver that faithfully mirrored the statutory language, identical to the waiver signed by Ms. Donovan is this case:

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

*Id.* Because the statutory language refers only to waiver of benefits under a "policy"—singular—it cannot standing alone suffice to waive inter-policy stacking, because, by definition, inter-policy stacking involves more than one policy. *Id.*

Finding the waiver insufficient on its face, the Court determined that it was necessary to consider other "circumstances" to determine whether the insured had made a "knowing" waiver

of inter-policy stacking. *Id.* Focusing on the facts of the case, the court reasoned that, because the insured had only one vehicle listed on the policy under which stacked benefits were sought, the premium reduction he acknowledged receiving could not be for a waiver of stacking under that policy, but necessarily must have referred to a waiver of inter-policy stacking. *Id.* at 542.

In reaching this result, the Court further observed that its reasoning would not be valid in a case such as this one, where the policy under which stacked coverage was sought insured more than one vehicle. That is so because under such circumstances the language of the waiver would literally apply to a rejection of stacked coverage *within* the policy, and the premium reduction being acknowledged by the insured could be assumed to stem from waiver of intra-policy stacking. *Id.* at 542 n.18. The Court then urged the legislature to address how to address waiver of inter-policy stacking where more than one vehicle was insured under a policy. *Id.* In a concurring opinion, Chief Justice Cappy cogently observed that accomplishing a waiver of inter-policy stacking could readily be accomplished by explicitly stating that stacking was waived "under the policy *or the policies*." *Id.* at 543.

*Craley* remains the controlling case, as no further decision sheds light on the issue before me, nor has the legislature acted in response to the Court's invitation.

State Farm argues that *Craley* did not invalidate the waiver language or "impose any requirement on insurers to employ different language." Def.'s Mot. Summ. J. at 4, ECF No, 16-8. That may literally be true, but State Farm ignores the Court's broader holding that an insured must be given "full information" about the availability of stacked coverage and minimizes its conclusion that a waiver that refers only to a single policy form does not "clearly address" inter-policy stacking. *Craley*, 895 A.2d at 541.

7

Ultimately, however, the fatal weakness in State Farm's position is that seeks to avoid the infirmities in Linda Donovan's waiver by relying on Corey Donovan's waiver of stacked benefits under his policy, Def.'s Mot. Summ. J. at 4, ECF No, 16-8, which is not relevant under *Craley*.[6] State Farm's argument relies heavily on the proposition that Corey Donovan seeks benefits for which he paid no premium, but that would only be true if he sought stacked coverage under his own policy.

As to his mother's policy, State Farm cannot rely upon Linda Donovan's waiver of intra-policy stacking because her policy covered multiple vehicles. *Craley* instructs that in such cases a waiver that refers only to the "policy" cannot be assumed to waive inter-policy stacking. *Craley* makes clear that the premium reduction Ms. Donovan acknowledged in waiving stacking correlates with a waiver of intra-policy stacking. Yet in propounding the stipulated record in this case, State Farm has not attempted to demonstrate any additional saving attributable to her purported waiver of inter-policy stacking. State Farm has not provided any basis for the conclusion that Ms. Donovan's waiver applied to inter-policy as well as intra-policy stacking.

Nor has State Farm offered any justification or excuse for the defect in the waiver. *Craley* recognized that responsibility for the inadequacy of the statutory waiver language falls on the legislature in the first instance, 895 A.2d, at 541 n.17, and the Court urged the legislature or the Insurance Commissioner to address the issue, which they did not. *Id.* at 542 n.18. I am not persuaded that the Commonwealth's inaction relieves State Farm from its obligation to secure a valid waiver. First, State Farm itself has not asserted legislative or regulatory inaction as a justification for its failure to secure an adequate waiver. It has instead sought to defend the

---

[6] "Accordingly, the Craleys sought uninsured motorist benefits under Randall Craley's motor vehicle insurance policy . . . . It is Randall's policy and its exclusions that are relevant to the legal issues presented in this case." *Craley*, 895 A.2d at 533.

8

validity of the waivers.  Second, it does not assert that it would have been unlawful for it to supplement the waiver to refer to benefits "under the policy **or the policies**" as suggested by Chief Justice Cappy, and I am hard-pressed to see how performing such a simple revision could be deemed objectionable.

Moreover, to the extent that State Farm might be reluctant to deviate from the statutory language, it had recourse under the Pennsylvania Code to seek guidance from the Insurance Commissioner under Chapter 35 of the Pennsylvania Code, which authorizes petitions for "issuance, amendment, waiver, or deletion of regulations," 1 Pa. Code § 35.18, and petitions for declaratory orders to "remove uncertainty." *Id.* §35.19.  In that regard, *Craley* was handed down in 2006, and Linda Donovan was presented with the waiver for her policy in 2012.  It bears emphasis that State Farm itself was the defendant there, and thus plainly on notice for a prolonged period of time as to a substantial issue concerning the adequacy of its waiver.  And Pennsylvania is hardly an insignificant market for State Farm.  According to the Insurance Information Institute, as of 2018 it is by a wide margin the leading writer of private passenger auto insurance in Pennsylvania, with a 19.4 percent market share as calculated by direct premiums written.  *A Firm Foundation: How Insurance Supports the Economy*, Insurance Information Institute, https://www.iii.org/publications/a-firm-foundation-how-insurance-supports-the-economy/state-fact-sheets/pennsylvania-firm-foundation (last visited June 25, 2019).  In short, though there may be a defect in the waiver provision of the MVFRL, State Farm was well aware of that defect and of its obligation to secure a knowing waiver of inter-policy stacking.  In the final analysis, the carrier must bear responsibility for the policy it issues.

## B. The "Household Exclusion" does not defeat Plaintiffs' Entitlement to Stacked Limits.

On the face of the Linda Donovan's policy, her son Corey is entitled to underinsured motorist benefits as a "resident relative," but that coverage is then taken away by an exclusion:

**Exclusions – Coverage W3**

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

Def.'s Mot. Summ. J. Ex. 2, at 37, ECF No. 16-6. The Auto Policy also sets forth a specific definition for the term "*CAR*," stating: "*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads." Def.'s Mot. Summ. J. Ex. 2, at 15, ECF No. 16-5. Under this provision, commonly known as the "household exclusion," Corey Donovan would be ineligible to receive underinsured benefits for injury sustained while operating his motorcycle.

While this case was pending, however, the Supreme Court of Pennsylvania issued a major decision that fundamentally altered the law of automobile insurance. In *Gallagher v. GEICO Indemnity Co.*, 201 A. 3d 131 (Pa. 2019) the Court held that the household exclusion violates the MVFRL and is therefore unenforceable as a matter of law. *Id.* at 138. It concluded that the household exclusion functions as a de facto waiver of stacked coverage even if an insured has not validly waived it under the statute. *Id.* The Court couched its analysis in broad terms, and Plaintiffs here argue that *Gallagher* prevents State Farm from enforcing the exclusion.

In reply, State Farm points out that the Plaintiff in *Gallagher* elected stacked coverage when the policy was issued, and argues that *Gallagher* should be limited to its facts. As an initial matter, I note that the Supreme Court explicitly abrogated two of the decisions upon which State Farm has relied to this point: *Gov't Emps. Ins. Co. v. Ayers*, 955 A.2d 1025 (Pa. Super. 2008), *aff'd*, 18 A.3d 1093 (Pa. 2011); *Erie Ins. Exch. v. Baker*, 972 A.2d 507 (Pa. 2008) (plurality). As a federal judge sitting in diversity, the sweeping nature of *Gallagher* makes me hesitant to begin a process of limiting its reach. As I have previously observed, the federal courts do not have the best record in predicting the future course of Pennsylvania law. *Landau v. Viridian Energy PA LLC*, 223 F. Supp 3d 401, 415 (E.D. Pa. 2016).

More importantly, the factual basis on which State Farm seeks to distinguish *Gallagher* would not apply in any event. Although Corey Donovan explicitly waived stacking, and Linda Donovan waived intra-policy stacking, the terms of Mr. Donovan's policy are irrelevant under *Craley,* and I have concluded that that Ms. Donovan did not knowingly waive inter-policy stacking. *Gallagher* controls this case, and therefore State Farm cannot rely upon the household exclusion to deny underinsured coverage.

**C. Because Ms. Donovan did not waive inter-policy stacking, the coordination of coverage provision limiting benefits does not apply.**

State Farm argues that, even if stacked coverage is available to Corey Donovan under his mother's policy, the amount recoverable is $50,000 rather than $100,000, by virtue of the following provision in the policy:

> **If Other Underinsured Motor Vehicle Coverage Applies – Coverage W3**
>
> 1. If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the **State Farm Companies** apply to the same ***bodily injury***, then:

11

a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

Def.'s Mot. Summ. J. Ex. 2, at 38, ECF No. 16-6. State Farm goes on to observe that, under Pennsylvania law, courts must give plain meaning to clear and unambiguous contract provisions unless to do so would be contrary to a clearly expressed public policy. *See Antanovich v. Allstate Ins. Co.*, 488 A.2d 571, 575 (Pa. 1985). In response, Plaintiffs challenge the validity of this provision, arguing that such a limitation is "nowhere authorized by the MVFRL." Pl.'s Second Suppl. Mem. of Law at 4, ECF No. 22. To the extent that Plaintiffs attack this provision on public policy grounds, I am unpersuaded. But that does not end the inquiry. Though I agree with State Farm that I must apply the plain language of the contract, such an approach does not yield the result that State Farm seeks.

The policy provides two forms of underinsured motor vehicle coverage, designated "W" and "W3." The policy describes Coverage W as the "Stacking Option" and Coverage W3 as the "Non-Stacking Option." Def.'s Mot. Summ. J. Ex. 2, at 34, ECF No. 16-6. The policy states that Coverage W applies to vehicles marked with a "W" on the Declarations Page, and that Coverage W3 applies to vehicles marked "W3." *See id.* Looking to the literal terms of the policy, the coordination of benefits provision on which State Farm seeks to rely applies only to unstacked W3 coverage. *Id.* at 38. In contrast, under form W coverage, the full limits of the policy, $100,000, are deemed excess and therefore recoverable by a relative living in the household. *See id.* at 37.

The consequence of a carrier's failing to secure a valid waiver of stacking is that the policy defaults to stacked coverage by operation of law. *Gallagher*, 201 A.3d at 137; *Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872 (Pa. Super. 2014) (en banc). Applying that principle to this case, the absence of a valid waiver of inter-policy stacking means that Form W3 cannot apply, and I must look to the provisions of the policy that provided for stacked benefits – Form W coverage. As noted above, under Form W, the entire limits of coverage are deemed excess to any other underinsured coverage available. Therefore, the entire $100,000 for underinsured coverage in Linda Donovan's policy is available as excess coverage for an injured relative resident, in this case her son, Corey Donovan.

### IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment will be granted, and Defendant's cross-motion denied. An order will be entered declaring that Corey Donovan is eligible for additional underinsured motorist benefits in an amount up to $100,000 under Linda Donovan's policy with State Farm.

    /s/ Gerald Austin McHugh
    United States District Judge